SALTMARSH *v.* CHICAGO & GRAND TRUNK RAILWAY CO.

1. TROVER — CONVERSION OF RAILROAD TIES — MEASURE OF DAMAGES.

   Where, in an action of trover, it appeared that plaintiff and defendant had each contracted with a logger and sawyer for the delivery of a specified number of railroad ties, and that defendant had paid the seller for, and appropriated to his own use, ties manufactured from plaintiff's logs and delivered upon plaintiff's contract, the value of the ties, and not of the logs before they were made into ties, was the proper measure of damages.

2. NEW TRIAL—ARGUMENT OF COUNSEL—MISSTATEMENT OF EVIDENCE—FAILURE TO OBJECT.

   An application for a new trial on the ground that plaintiff's counsel misstated the evidence in his argument to the jury is properly denied, where no objection was made at the time by defendant's counsel, and their failure is sought to be excused only on the ground that they were not themselves sure that the language complained of was a misstatement.

Error to Ingham; Person, J. Submitted October 25, 1899. Decided December 2, 1899.

Trover by John F. Saltmarsh against the Chicago & Grand Trunk Railway Company. From a judgment for plaintiff, defendant brings error. Affirmed.

*L. C. Stanley* (*E. W. Meddaugh* and *Geer & Williams*, of counsel), for appellant.

*F. S. Porter*, for appellee.

MOORE, J. The plaintiff obtained a judgment in an action of trover against defendant for the value of nearly 1,000 railroad ties. There was no dispute about the defendant having received and converted the ties to its own use, but its defense was that it bought them of George Pope, who had a right to sell them, and paid him for

them. The record discloses that prior to January, 1894, the plaintiff was the owner of a portable sawmill, which he had leased to his son, John A. Saltmarsh, and George Pope, who in February, 1894, moved the mill upon land owned by Hiram Smith, adjoining land owned by the plaintiff. It is the claim of plaintiff that upon his own land was timber suitable for ties, sufficient to make twelve or fifteen hundred of them. It is also his claim that young Saltmarsh and Pope bought of Mr. Smith, for the sum of $150, timber suitable for making ties. He claims Saltmarsh and Pope were indebted to him for the rent of the mill, and agreed to make for him 2,000 ties, and deliver them upon the right of way of defendant. February 15, 1894, plaintiff made a written contract with defendant to deliver to it, upon its right of way, 2,000 ties. It is the claim of plaintiff that, prior to March 23d, young Saltmarsh and Pope had paid Smith some money, and had sawed him 40,000 feet of pine, to apply on their timber purchase, and at the same date had delivered on the right of way of defendant, for plaintiff, upwards of 300 ties. On the 23d of March the partnership between young Saltmarsh and Pope was dissolved, and one formed between Pope and George Klotz. It is the claim of plaintiff that Pope and Klotz succeeded to the rights of Saltmarsh and Pope in the Smith timber and the mill. On March 23d the plaintiff made a contract with the new firm to cut and deliver to him, on the right of way of the defendant, 2,000 ties, 500 of which were to be delivered every 15 days, until all of them were delivered. It is his claim that, early in May, 957 of these ties had been delivered on the right of way for him, and it is these ties which are in controversy. It is the claim of defendant that the Smith timber was bought by Pope, and that Pope rescinded the contract with the plaintiff in April. On the 2d of May Pope entered into a contract with the defendant, in his own name, to furnish it 2,000 ties. The 957 ties in dispute were received by the railroad company, who on June 27th paid Pope for them. All of these ties were cut by the

mill operated by Pope and Klotz, and it is the claim of the plaintiff that he had no knowledge of such a contract until the day Pope was paid for the ties. The plaintiff testified he had no knowledge of this contract, and Klotz also testified he had no knowledge of it, until the 27th of June. A second 1,000 ties were made and delivered by Pope and Klotz to defendant. Both the plaintiff and Pope claimed title to these ties, and the defendant declined to take them until both consented in writing that it might do so and pay the money to Mr. Sturgis, a justice of the peace. This was done, and the title to those ties is not in controversy here. All of the ties were cut by the mill originally owned by the plaintiff. The respective parties gave testimony tending to support their claims. The testimony was very contradictory. The circuit judge gave a very long and careful charge to the jury, who returned a verdict in favor of the plaintiff.

Many assignments of error are made and discussed, which we do not think it would be profitable to discuss in this opinion.

Counsel say in their brief that the purchase by Pope of the Smith timber is one of the salient points of the defense, and is not disputed. Counsel are in error in this. The testimony and some of the established facts in the case indicate that the purchase of this timber, while made by Pope, was for young Saltmarsh and Pope, and was in large part paid for by them, and that Pope and Klotz succeeded to their rights in it.

It is claimed the contract was for 2,000 ties, and was never completed, and that plaintiff could not be deemed to have accepted any of the ties until they were marked by the number of his contract, and that the court erred in his instruction to the jury in relation to delivery. The contract did not provide the title should not pass until the ties were marked. It did provide where they should be delivered, and that 500 of them should be delivered every 15 days. Without going into detail, it may be said the charge of the court upon that feature of the case was quite as favorable to the defendant as it was entitled to have it.

Complaint is made because the court charged the jury that the measure of damages to which plaintiff would be entitled should be the value of the ties, and not the value of the logs before they were made into ties. Before there was any delivery of this timber upon defendant's right of way, it was manufactured into ties. When the title passed to the plaintiff by the delivery upon defendant's right of way, he became the owner of the ties. They were afterwards converted to the use of the defendant. If the plaintiff was entitled to recover at all, the measure of damages was correctly stated by the learned judge.

After the judgment a motion was made for a new trial, —among other reasons, because counsel for plaintiff had improperly stated the testimony in his argument to the jury. This motion was based upon the affidavit of the court stenographer, which affidavit was controverted by the affidavit of the attorney. The circuit judge overruled the motion. He finds that the counsel used the language as testified by the stenographer. He also finds the argument of the counsel was not objected to at the time it was made, and was of the opinion that no harm was done by the argument. Counsel seek to excuse their failure to call the attention of the court and counsel to the misstatements made in the argument by the fact that they were not able to get a statement from the stenographer earlier that the attorney was misstating the evidence. If the recollection of the counsel as to the evidence was so faulty they could not rely upon it sufficiently to call the attention of the counsel and court to the fact, not very much blame can attach to opposing counsel for not correctly remembering it. Counsel heard the argument of the attorney for the plaintiff. They made no claim to either the court or counsel that the argument was an improper one. They cannot remain silent, as we have repeatedly said, under such circumstances, until a verdict is rendered against their client, and then use the improper argument as a basis for a new trial.

Judgment is affirmed.

The other Justices concurred.